Thank you, Judge Owens, and may it please the Court, my name is Gaurian Deduca and I have the privilege of representing K. J. who is in court today along with his entire family. I would like to reserve three minutes for rebuttal. Very well. Thank you. This Court shares the same two issues as the Jensen case you just heard of qualified immunity and the expungement of records, but this case was decided on summary judgment, not a motion to dismiss, and in this case the District Court did reach the constitutional issue and found that the defendants had violated K. J.'s right to procedural due process. I'd like to start with that constitutional violation, then turn to qualified immunity and expungement if time allows, but of course I'm here to answer any questions in any order. The constitutional violation here was that the defendants imposed new discipline based on new charges and new evidence and they never gave K. J. an opportunity to respond to those charges and to defend himself. So let me jump in with a preliminary question. The video, I understand during the first hearing, or the only hearing I'll call it, the video was not part of that, correct? Correct. Okay, thank you. Correct. And neither was any allegation by the defendants that K. J. had hit anybody or injured anybody. The allegation at the first hearing was that he had been involved or participated in a group fight and that was described as a pushing and shoving match. And then a few days later, the allegation changed significantly when the defendants accused K. J. of hitting somebody in the head and causing a serious injury. But they never gave him the opportunity to respond to those charges and that was really important because the administrators here didn't witness the fight, didn't have any direct evidence of wrongdoing, and even a year after the fight when we took his deposition, the vice principal didn't even know who threw the punch that caused the injury. And so it was important and I would say essential for the defendants to interview K. J. and to ask him if he ever hit anybody. And if they had done that, he would have vehemently denied hitting anybody during that fight because he simply didn't do that. But also, on the one hand, the suggestion is that the suspension was extended from three days to five days, but on the other hand, it actually was extended for several weeks. Is that right? Yes, Your Honor, that's exactly right. It was actually extended. In hindsight, we can measure the exact amount. It was 13 more days of suspension. At the time they issued it, it was an indefinite suspension that was pending the outcome of the expulsion hearing. And that brings me to the second point, which is not only did they increase the number of days of suspension, but they tried to expel him from his high school, which significantly raised the stakes and the potential consequences for K. J. by that additional discipline. So the question. But that wouldn't interact with the Goss hearing because they weren't proposing to expel him before a hearing. Yes, Your Honor. So the consequence of the expulsion is just that it extended the suspension. Correct. It's because they proposed the expulsion and extended the suspension until that hearing was held. That significantly extended the number of days that he was excluded from school. When did they, just to be clear, just to be clear about it, when did they propose the expulsion? On February 8th of 2022. That was the same day as, that was not the same day as the incident. The incident was on the fourth. No, that's correct. So the incident was on the fourth. The first suspension was on the fourth. Right. And when that first suspension was either already served or almost served is when they imposed a second suspension, which extended the exclusion from school from three to 13 days. And as I said, proposed his expulsion. Okay, thank you. So the question is, is there qualified immunity? And I agree with the statement from counsel in the prior case about what the standard is. The standard is, would reasonable administrators on the ground be able to read a case and figure out what they need to do to comply with the law? And I would say that in this case, the defendants here, if they only had Goss and no other decision from any other court, they would have known exactly what to do for two reasons. One, Goss clearly establishes when due process is triggered for students. And due process is triggered any time school administrators impose discipline that has the effect of excluding students from school. So as I said before, on February 8th, when they issued the second suspension, Goss was clearly triggered because it increased the number of days that KJ ended up missing from school. So then the question becomes, what did the administrators have to do to comply with Goss? And that's clearly answered in the decision too, because there's three separate requirements that Goss imposes. They have to, administrators have to tell the student what it is that they did, what the charges are, what the evidence the charges are based on, and they have to give the student an opportunity to respond to those charges and give their side of the story. And here, if I could just jump in this, it'll help my thinking. It seems to me that as I read Goss, the school district has two problems. First, Goss talks about, uses that 10 days. That's like more than 10 is different. And we have that problem. Then we also have the problem is that evidence was introduced against your client after the hearing happened. There was not a second hearing to say, well now let's, we got this new evidence, we're going to start over again. That that never happened here. That's exactly right. So you've got two problems under Goss, if you're the school district. Yes. The third one is that they changed the charge. I'm sorry? The third one is that they changed the charge. They did change the charge, and you can call that a third violation or part of the second violation, but you're absolutely right, Judge Owens. Yes, they converted the suspension from a short term to a long term suspension when they issued the second one. On top of that, even the more rudimentary protections for a short term suspension were not complied with. Those protections are clearly established by Goss. Every administrator should know that, what those are. You need to tell the student what they did. You need to tell the student what evidence you have. And you need to allow them to respond. And they didn't do any of those three things with regard to the new charge. Well, they did tell the parents about the new charge. That's true, but they didn't tell KJ about the new charge. And Goss is very clear that the student is the one who has the right to do it. That seems to be your weakest point, because I don't know whether the notice to the parent wasn't good enough. But the larger point is that they didn't get his story in response to that. Exactly. You anticipated my point, which is even if that notice had been given to KJ, it still wouldn't have been good enough under Goss because they never heard from him. They never gave him an opportunity to say whether or not he hit anybody before they issued that second suspension. I had a completely different question, just real quick, about the superintendent. Obviously, for those of us who were in San Diego, we know he's no longer the superintendent. Is your case still against him as the idea he actually had actual knowledge of this? Or was it because he happened to be the superintendent at the time? So, Your Honor, I would say two things in response to that. Our official capacity claim against the superintendent, we would have to substitute the new superintendent under, I think it's rule 25. The individual capacity claim against him, we still have that claim against him personally. There's been briefing on that, whether or not that should be dismissed or not. I would say that the district never addressed the standard for individual liability of the superintendent. So that should go back to the district court. We should just let the district court sort that all out if we were to agree with you. Absolutely. I'd like to say one more thing about qualified immunity and then briefly turn to expungement. I would point out that Goss by itself should have told the administrators here what to do. But there are also six or seven district court decisions that are on point. And the point about those district court decisions is that they are unanimous. They're over the course of 30 or 40 years. None of them suggest that this is a novel or open question. They were all decided by a straightforward application of Goss. And so that further buttresses our point that we're not asking for this court or we weren't asking the district court to create new law here or to create a new standard or anything of the sort. All we were asking the district court to do and the administrators was to read Goss and apply it. On expungement, real briefly because I'm running short on time, I want to point out that the district court made a mistake because it applied the wrong standard. It granted summary judgment to the defendants based on standing. But this is a mootness case, not a standing case. And first of all, I think it's black letter law that standing has to be measured when you file the complaint, not at some later point in the future. And when we filed our complaint, KJ was sitting home from school. He was still suspended and we requested an injunction that would have returned him back to school. There could be no possible argument that KJ didn't have standing when he filed his complaint. The argument is that he lost that standing or the case became moot when they allowed him to go back to school. But that's a mootness argument, not a standing argument because it's based on facts that happened after we filed. And that makes a huge difference for a few reasons. One, mootness is a much more flexible standard than standing. The burden shifts to the defendants. And a much lower showing of future harm has been held to be sufficient to give the federal court jurisdiction. And finally, if it is a mootness issue, then Flint is directly on point and governs. The same mootness argument was made in Flint. The same records were at issue of school discipline records. And this court held that just the fact that those school discipline records could potentially affect a student's future employment or college admission was enough to get around mootness. And the same is true here. I'd like to reserve the balance. Very well, thank you, Counsel. Good morning, Your Honors. Mike Sullivan on behalf of Dr. Jackson, Mr. Bedorsky, and Mr. Caviola. I'd like to start off by addressing the due process issue and specifically the question that the court raised about new evidence. And then I'll talk about ten days, but I'll hit them in that order if that's okay. I would suggest this is, if we look at what the court says in Goss, this was, it's not the situation that you must interview the plaintiff first and last. What the testimony is, undisputed, is that Mr. Caviola asked KJ about the fight. What happened in the fight? That's what Goss says you need to do. What was it that happened? He got his side of the story, he got the background with regard to that. That's actually in writing from KJ in terms of what led to the fight and that there was alleged statements that had been made to him and the other person had bullied him in the past. That's what you're required to do under Goss, is ask the person about what it is. You're not required to then, because you've spoken to somebody else, go back and talk to them again. This is not a case where there was a new fact. Oh, now I'm saying you had a gun. Was he told that he intentionally injured another student? Well, he wasn't given the specific elements, as the court says you don't have to do. He was asked, what happened with the fight? The change from being participated in the fight to tried to injure the student, I forget the exact term, willfully tried to do that. That's just the factual conclusion that the person made after they saw the evidence. There is nothing, in fact, this court and the Supreme Court- Just to read from Goss. Sure. The student must be given oral or written notice of the charges against him. He wasn't. If he denies them an explanation of the evidence the authorities have, he wasn't. He was given an opportunity to present his side of the story, but not as to the charges, the new charges or the new evidence. See, I would disagree that when you're asking the person, you participated in a fight. Tell me what happened in the fight. Was he given an explanation of the evidence the authorities had? Of the evidence that they had at that time? Yes, but then they had new evidence. That's the problem. But the point is, there is no law that turns around and says, there's no case that says you've gotten testimony from somebody else, and now you've got to go back- Why did they increase the punishment from three days to, what was it, five days, and expulsion? And I would like to talk about the extension beyond that. The reason that they did, as it's stated in the writing, is because they heard about the extent of the injuries. This was after the little meeting. Yes. They heard about the extent- Well, they didn't only hear about them, they saw a video. Well, they did. They saw the video. But what they stated in the reason why they did it, in the document, what they stated was, we heard about the extent of the injuries. That's what's stated in the document. Well, that was medical evidence. He wasn't going to be able to respond with regard to how badly was the person injured. What was the information that we got back from the doctor? That was not going to be, he wasn't going to say, no, no, the doctor's wrong. But it was not one person, but two, as I understand it. And it was whether they were injured at all. Oh, I don't think there was a question. I don't think there's anything that would indicate that there was a question as to whether or not they were injured at all. That was evident from the beginning and stated at the beginning that these people were injured. The question is, how badly were they injured? A person comes out of a football game and they're limping. The question is, did they blow their ACL or was this a slight sprain? That was the question, is how badly was this injury? And they got new information with regard to that that a medical doctor could answer. Here's the other thing that I wanted to bring up with regard to this extension. It wasn't an indefinite extension. And remember that Goss is talking about the fact of trying to make this workable for the school. What is the school to do in the situation where you're trying to provide a reasoned hearing, but you can't put the person back in the situation where there could be a reoccurrence? There was clearly bad blood between these students. There was a statement that's in the record from KJ's mother saying that she didn't feel that her son was safe at school. They've stated that they want to get counsel. So there needs to be some protracted period of time, not protracted, but some period of time before you have the hearing. If you put everybody immediately back in school and suspend the suspension, there's another fight and now you have a negligence claim. It's not about that. It's about a procedural issue. Yes, but the question is how is the procedure going to work here? Does the procedure stay, say, put everybody back in school until you have the hearing? Or is the procedure we can hold the status quo? And to address, Judge Owens, your point about, you know, how long this was in 13 days, it's really not accurate to say that. And here's why. They immediately put them on notice of the opportunity for alternative school. What the law says is that they have the obligation to provide schooling, not a specific school. And immediately at the time they put them on notice on the 8th, when they extended it from three days to five days, he was out for, I mean, he wasn't going to come back per their instruction for the five days. But beyond that, he could have at any time gone to ALBA. That's their alternative school. That was put in writing with regard to talk to our, I forget what the person is called, but talk to our person with regard to that. And so there was the opportunity. But isn't that exactly what a school should do in that situation? I mean, had it not been for the additional information that the vice principal acquired after meeting with K.J., and the suspension had only been for three days, he would have been back in school on the fourth day. Is that right? Would have been back in school. The fourth was a Friday. In four days. He would have been back in school on, let's see, Monday. Monday, Tuesday, Wednesday, he would have been back in school, right? No, because the fourth wouldn't have counted as a day. He would have been out Monday, Tuesday, Wednesday. He would have been back in school on the 10th. Nothing else would have happened. He just would have been back in school had they not extended. He'd only been out for three days. That's all I'm trying to, that's it. And he would have been back. Would have been back. And so the additional information caused them to extend the suspension and to decide that he should be expelled from school. A recommendation for expulsion. I mean, he couldn't do it. Had to go, the vice principal couldn't impose. Right. So he goes to a hearing. Well, he recommended that he be expelled, which triggered a whole other scenario. Right, goes to a hearing. Right. And he couldn't go back to school while that was in process. Well, what he could have done, had they chosen to do so, is he could have gone back to school at ALBA. That's the school that is set up for exactly these situations. He could have gone back to school during that interim period of time, which courts have said is a reasonable alternative in terms of that. But what's the alternative? The alternative is you put him back in school. They get another fight. And you have a lawsuit saying you didn't protect my kid because you knew there was danger. You knew there was bad blood. And before there was any hearing, before there was any decision, you put them back together and now there's a problem there. So this was exactly the right way to have done it. I would suggest they needed to maintain the status quo until there was a hearing. This was not like the cases that counsel references where they didn't do anything. They didn't set a hearing. There was immediate communication. There was immediate written notification of rights. There was an opportunity for him to go to ALBA. Let me, unless you have any other questions, let me just briefly hit the qualified immunity and then the official capacity issues. With regard to the qualified privilege issue, I think that it's not at all clear to administrators. What Goss says is this is flexible. This depends on the specific case. We have to see what happens. From their standpoint, they've gotten his story multiple times. And I would also note, by the way, and this is a little bit of a side note, the district judge made an error with regard to the due process if for no other reason than he considered the evidence that was provided with regard to our motion for summary judgment, which was based on the undisputed facts. They brought a motion for summary judgment, and there is a dispute on this whole issue of exactly what was said to them on the 8th when it was extended. Said to who? What was said to, it was said to the, KJ's mother, actually, I'm sorry, on the 7th. What was said to KJ's mother after he had viewed the video. Mr. Caviola's testimony is that he spoke to the mother and did more. We can't, for purposes of our summary judgment, we can't rely on that, but it's disputed. But at most, it should be sent back to the, to. And did what, I'm sorry? He spoke to the mother and did what? Spoke to her about the evidence that he had gotten from the video. He didn't speak to the child. He didn't ask the child what happened. Well, it's, as you pointed out, I don't think that the. Well, I think that's true as to notice, but not as to hearing the side of the story. She wasn't there. She can't tell the side of the story. Well, she did tell the side of the story. She submitted an email with regard to that. She had taken over from his perspective. She had taken over being his mouthpiece with regard to that. And the school isn't going to interject and say, no, no, I don't want to talk to you parent. Let me talk directly to the student. If the parent's wanting to speak, then that's what it was. I didn't see any email in which, I saw some emails, but I didn't see an email in which she. The email that she sent was on the night. It was like 8.47 p.m. on the night of the 4th. Do you have an ER record for that? I do. I'll have to look it up. I had a printing issue when I got here and I apologize. But it's around 118, something like that, somewhere in that range of the ER. Anyway, the fact is, I certainly don't think it's clear at all to the administrators that having interviewed him, having gotten his story verbally, having gotten his story in writing, having gotten his additional story version from his mother, that they hadn't gotten his side of the story, that they had not complied with the requirements under GOSS. And so I don't believe that there's a basis for bringing an individual, a claim against them individually. Lastly, let me hit the standing issue. Council talks about mootness and standing. The fact is, you have to have both. It has to not be moot and there has to be, you know, Article III standing. And when I look at the cases here, there are Ninth Circuit cases, let me step back and say, it's very clear, the courts have said very specifically that there is no automatic standing for expungement. There has to be an injury in connection with the expungement. And if you look at the cases, you have the two cases, one, Judge Paz, that you authored and one that you were on with regard to that. In those cases, you had expungement issues that did not involve private records that involved demonstrated harms to the student. You also, on the other hand, have two cases, I'm going to flip to them really quick here so I can give you the names. You have the two Ninth Circuit cases, Cruz and Phillips. And in Cruz and Phillips, expungement was held not to confer standing and the reason was that in those cases, there wasn't an injury. And Phillips was very clear last year in 2023 in saying that retention of records alone. But here we know that, well, we don't know, but I mean, we could decide that there was in fact an injury retrospectively. I mean, i.e., there was an injury, he was invalidly suspended, if we hold that, right? And so the this is an instance in which the expungement would be responsive to an actual constitutional injury. The whole point of the Phillips case, or at least a lot of it, was about that they seem to be arguing for a per se rule about expungement giving you standing, whether or not you had, there was anything unconstitutional about the collection of the material. As I understand, what is all that is being requested at this point? At this point, because the case, but not when the case was filed. Well, at the time the case was filed, expungement was not even sought as a remedy. And so at the time expungement was sought as a remedy, that was the only thing. So the case is moot as to any type of reinstatement. There is no standing with regard to expungement and you have to have both. It's not an either or situation. I do see my time is run, but if I could wrap up on that briefly. And so I think you have to go back and you look at the, they have to show with regard to the only relief that is being sought, which is expungement, that expungement would cause some injury. And given the fact that the records are private and the only thing that. There are a fair number of cases recognizing that for in a school situation. And that there is a likelihood of injury through college applications, through job applications, through other things that happen during the school. And that there's a sufficient risk, at least, to get over a mootness question. No, there are not in cases where the records, like they are here and they're private. There are not cases that say simply. But other teachers would be allowed to look at the records, his subsequent teachers. I don't believe the subsequent teachers. Administrators can look at it in the case of discipline. But then you would have to say, you'd have to speculate, which courts have said you can't do on that. Speculate that he's going to commit some future discipline. Well, let me ask you this way. I mean, all of us have had kids go through college. I mean, the college application process asks all kinds of questions, including, have you been suspended? If you apply for scholarships, you have to say whether you've been suspended or not, and the length of it. But he would have to answer that in the affirmative regardless. Right. But there's three versus five. So what if the application was, have you been suspended four days or more? It doesn't, but that's not. The common app, which is the only evidence. Remember, there's summary judgment. They have to submit evidence. They haven't submitted any evidence on that. The common app, which they did ask for judicial notice of now, doesn't ask that. What the common app says, if I can find it to where I say it says any suspension. Yeah. It says any suspension, and it says, and we don't even say that this will be considered. And some schools look at this, and some schools don't. It makes it very clear. I would encourage you to look at the language on the common app, which is the only evidence they submitted. It doesn't, it makes it completely speculative that it will be viewed, and it would have to be disclosed in any event, and it makes no difference. And I'll tell you, candidly, as an education and higher ed lawyer for 25 years, I've never seen one that says four days or more, five days or more. It's exactly what you see on the common app. And in this case, because there was due process given for the three days, he has to disclose in any event. And if he wants to go into the Army, he doesn't have to say, I don't know the answer to this, but does he, or work for the FBI or something? He doesn't have to answer questions like this? Well, the answer is we don't know. They haven't submitted any evidence. This is a summary judgment case. They would have had to have submitted some evidence with regard to that, and then we could rebut it. And I would be prepared to rebut it. They haven't submitted any evidence, so I can't tell you what they do at Army. All right. Thank you, counsel. Can I just add one clarification point? Sure. And that's this. You said that the email that the mother wrote advancing KJ's story was in the record. Yes. The only email chain that I've seen in the record is what was attached to the stipulated facts around ER-128. Me too. I can't. So if it's attached to Mr. Caviola's declaration, it's part of his declaration. Okay, part of his declaration. Part of his declaration. My recollection is Exhibit B to Mr. Caviola's declaration, the email that he received, it's a chain. It's about the fourth email down. In other words, there's a thing where they're responding on other things, but if you read down further in the chain, that's there. It was sent at 847 on the night of the 4th. Okay. Thank you. Okay. Thank you. Yeah, as I just see that now. You may proceed. Oh, thank you. I'd like to start with the last point first about disciplinary records. And Judge Berzon, I think you're exactly right. School discipline records are different. They're unique. And the Phillips case said so at page 995 of the opinion when it distinguished Flint. And Flint is not alone. Cases going all the way back to Goss have recognized that school disciplinary records, if a student is suspended or expelled for charges that are proven to be erroneous, that that would cause the kind of reputational harm that is enough to give standing and to get around mootness concerns as was the case in Flint. My colleague says that the defendants here complied with due process because on the first day, on February 4th, they met with KJ and asked him to give his version of what happened during the fight. But at that point in time, KJ had no reason to believe that he was being accused of hitting someone in the head or causing a serious injury, even if he could somehow read minds. Even Vice Principal Caviola did not know at that time that a student had been hit in the head or injured in the fight. What the Vice Principal and KJ discussed on February 4th was a group fight and a pushing and shoving match. And KJ never had the opportunity to respond to the new charges that he had hit somebody in the head and caused an injury. And that email that my friend referred to, it's very important to point out a couple things about that. That email was on February 4th. It was before there was any allegation or suggestion that KJ had hit anybody or injured anybody in that fight. And there was an argument that it's somehow a disputed fact whether or not KJ had an opportunity to respond to the new charges. Well, if you look at ER 113, at paragraph 13, that's our joint statement of undisputed facts. The parties agreed that at no point after the time KJ went home from school on February 4th, did he ever speak with any of the school administrators before he came back on March 1st. So he simply never was given one chance to tell Vice Principal Caviola what happened or what he did or didn't do in that fight. Was anybody else suspended by the way? Yes, Your Honor. I believe five students in total were suspended. And that brings up a good point. This was a group fight with lots of students involved. And every student had a different level of involvement in the fight. So it's really important to point out that, again, I said this before, a year after the fight, I asked Vice Principal Caviola, what made you think that it was KJ who caused this injury? And he still didn't know. He still didn't know a year after the fight who caused this injury. And so Goss is very clear about this. When the administrator doesn't see what happened, they have to get the student's perspective, not the parent's, not anybody else but the student who was there and who can respond to what exactly happened or didn't happen. And again, if KJ had that opportunity, he would have looked Vice Principal Caviola in the eye and said, I didn't cause this. This isn't about whether the suspension should have been extended or not. This is about process. Like Judge Berzon, you said, this is a due process case. It's about process and whether the administrators could do this without ever hearing from KJ on this one fact that one new charge that was the difference between missing three days of school and missing another 13 days of school while everything was sorted out by the administrator. So if there's, thank you. I would ask the court to reverse and remand back to the district court. Thank you, counsel. Thank you both for your briefing and argument in this case. This matter is submitted.
judges: PAEZ, BERZON, OWENS